UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA

| | |
|---|---|
| ASHLEY M.[1], ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CIVIL NO. 1:21cv269 |
| ) | |
| KILOLO KIJAKAZI, Acting ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

OPINION AND ORDER

This matter is before the court for judicial review of a final decision of the defendant Commissioner of Social Security Administration denying Plaintiff's application for a period of disability, Disability Insurance Benefits (DIB), and Supplemental Security Income (SSI) under the Social Security Act, 42 U.S.C. § 423(d); 1382c(a)(3). Section 205(g) of the Act provides, inter alia, "[a]s part of his answer, the [Commissioner] shall file a certified copy of the transcript of the record including the evidence upon which the findings and decision complained of are based. The court shall have the power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the case for a rehearing." It also provides, "[t]he findings of the [Commissioner] as to any fact, if supported by substantial evidence, shall be conclusive. . . ." 42 U.S.C. §405(g).

The law provides that an applicant for disability benefits must establish an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to last for a continuous period of no less than 12 months. . . ." 42 U.S.C. §416(i)(1); 42 U.S.C. §423(d)(1)(A). A physical or mental impairment

---

[1] For privacy purposes, Plaintiff's full name will not be used in this Order.

is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §423(d)(3).  It is not enough for a plaintiff to establish that an impairment exists.  It must be shown that the impairment is severe enough to preclude the plaintiff from engaging in substantial gainful activity.  *Gotshaw v. Ribicoff*, 307 F.2d 840 (7th Cir. 1962), cert. denied, 372 U.S. 945 (1963); *Garcia v. Califano*, 463 F.Supp. 1098 (N.D.Ill. 1979).  It is well established that the burden of proving entitlement to disability insurance benefits is on the plaintiff.  *See Jeralds v. Richardson*, 445 F.2d 36 (7th Cir. 1971); *Kutchman v. Cohen*, 425 F.2d 20 (7th Cir. 1970).

Given the foregoing framework, "[t]he question before [this court] is whether the record as a whole contains substantial evidence to support the [Commissioner's] findings." *Garfield v. Schweiker*, 732 F.2d 605, 607 (7th Cir. 1984) citing *Whitney v. Schweiker*, 695 F.2d 784, 786 (7th Cir. 1982); 42 U.S.C. §405(g).  "Substantial evidence is defined as 'more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rhoderick v. Heckler*, 737 F.2d 714, 715 (7th Cir. 1984) quoting *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1410, 1427 (1971); *see Allen v. Weinberger*, 552 F.2d 781, 784 (7th Cir. 1977).  "If the record contains such support [it] must [be] affirmed, 42 U.S.C. §405(g), unless there has been an error of law." *Garfield*, *supra* at 607; *see also Schnoll v. Harris*, 636 F.2d 1146, 1150 (7th Cir. 1980).

In the present matter, after a hearing, the Administrative Law Judge ("ALJ") made the following findings:

1. The claimant meets the insured status requirements of the Social Security Act through June 30, 2024. (Exhibit C7D).

2. The claimant engaged in substantial gainful activity during the following periods: from the amended onset date until January 2020. (20 CFR 404.1520(b) and 404.1571 *et seq*.).

3. There has been a continuous 12-month period(s) during which the claimant did not engage in substantial gainful activity. The remaining findings address the period(s) the claimant did not engage in substantial gainful activity.

4. The claimant has the following severe impairments: degenerative joint disease of the right knee; asthma/chronic obstructive pulmonary disease/obstructive sleep apnea; morbid obesity; headaches; bipolar II; and, borderline personality disorder. (20 CFR 404.1520(c)).

5. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

6. After careful consideration of the entire record, the undersigned finds the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except the claimant can stand or walk for two hours, and can sit for six hours. The claimant can occasionally climb stairs or ramps, balance, stoop, or crouch; can never climb ladders, ropes, or scaffolds, kneel, or crawl. The claimant must avoid concentrated exposure to extreme cold, extreme heat, humidity, vibration, fumes, dusts, odors, gases, poor ventilation, moving machinery, and unprotected heights. Work with a moderate level of noise. With work that can be learned in thirty days, or less, with simple routine tasks; simple work-related decisions, routine work place changes; and occasional interaction with coworkers, supervisors, and the general public.

7. The claimant is unable to perform any past relevant work (20 CFR 404.1565).

8. The claimant was born on March 21, 1988 and was 29 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

9. The claimant has at least a high school education (20 CFR 404.1564 and 416.964).

10. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

> 11. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).
>
> 12. The claimant has not been under a disability, as defined in the Social Security Act, from November 15, 2017, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

(Tr. 12-21).

Based upon these findings, the ALJ determined that Plaintiff was not entitled to benefits, leading to the present appeal.

Plaintiff filed her opening brief on February 3, 2022.  On March 17, 2022, the defendant filed a memorandum in support of the Commissioner's decision to which Plaintiff replied on March 22, 2022. Upon full review of the record in this cause, this court is of the view that the Commissioner's decision should be affirmed.

A five step test has been established to determine whether a claimant is disabled.  *See Singleton v. Bowen*, 841 F.2d 710, 711 (7th Cir. 1988); *Bowen v. Yuckert*, 107 S.Ct. 2287, 2290-91 (1987).  The United States Court of Appeals for the Seventh Circuit has summarized that test as follows:

> The following steps are addressed in order:  (1)  Is the claimant presently unemployed?  (2)  Is the claimant's impairment "severe"?  (3)  Does the impairment meet or exceed one of a list of specific impairments?  (4)  Is the claimant unable to perform his or her former occupation?  (5)  Is the claimant unable to perform any other work within the economy?  An affirmative answer leads either to the next step or, on steps 3 and 5, to a finding that the claimant is disabled.  A negative answer at any point, other than step 3, stops the inquiry and leads to a determination that the claimant is not disabled.

*Nelson v. Bowen*, 855 F.2d 503, 504 n.2 (7th Cir. 1988); *Zalewski v. Heckler*, 760 F.2d 160, 162 n.2 (7th Cir. 1985); accord *Halvorsen v. Heckler*, 743 F.2d 1221 (7th Cir. 1984).   In the present case, Step 5 was the determinative inquiry.

In support of remand, Plaintiff argues that the ALJ failed to account for her medication side effects.  Specifically, Plaintiff claims that she has tardive dyskinesia, an involuntary movement disorder, which she claims can be a side effect associated with antipsychotic medication. Plaintiff asserts that her medications caused leg weakness, leg tremors, and mood swings.  However, the evidence merely shows that Plaintiff was to "watch" for leg weakness as a possible side effect of Latuda. (Tr. 940-44, 938).  Plaintiff also claims that she had mood swings and an occasional tremor in her right leg. (Tr. 928-32, 947-64, 966-76). However, as the Commissioner points out, these are not side effects of medication but are symptoms that her medication is not totally effective. Likewise, Plaintiff's "limp due to sciatica" is not a side effect of medication.  In any event, the ALJ accepted this limitation by limiting Plaintiff to mostly seated work.  In sum, there is no basis for remand on this point because the ALJ did not fail to consider medication side effects, and Plaintiff has not cited to any evidence that would support any medication side effects that should have been considered.

Next, Plaintiff argues that the ALJ failed to consider explanations for her noncompliance with prescribed physical therapy related to her knee impairment. Plaintiff contends that her bipolar disorder caused her to be noncompliant.  However, Plaintiff has not cited to any evidence that her mental impairment (or any other impairment) resulted in the inability to pursue recommended treatment.

With respect to Plaintiff's knee, the ALJ stated:

> Regarding the claimant's knee impairment, she did not consistently begin reporting pain and seeking care for this impairment until about April 2020. In fact, she called her pain intermittent, but said it was worse with standing, she had giveaway weakness, and had tried bracing. She was prescribed physical therapy. (Exhibit C8F, C10F), although there is no such treatment after May 2020. Imaging of her knee confirmed mild to moderate medial compartment joint space narrowing, and mild patellofemoral degenerative changes. (Exhibit C10F).

(Tr. 18).

This summary of the medical record regarding Plaintiff's knee does not show that the ALJ was discrediting Plaintiff's knee impairment due to being noncompliant with physical therapy. Rather, the ALJ simply found that the evidence shows that Plaintiff had intermittent pain, was prescribed physical therapy, and did not have treatment after May 2020. (Tr. 810-19, 859-84). The ALJ found that Plaintiff's degenerative joint disease of the right knee was a severe impairment, and accounted for it in the RFC. (Tr. 13,18). The ALJ noted that the knee impairment was supported by imaging that "confirmed mild to moderate medial compartment joint space narrowing, and mild patellofemoral degenerative changes". (Tr. 18, 859-84). The ALJ explained that Plaintiff's "varied physical impairments caus[e] more than a minimal limitation in [her] ability to complete work activity including: degenerative joint disease of the right knee, a breathing impairment, obesity, and headaches". (Tr. 17). Thus, in the RFC, the ALJ restricted Plaintiff to mostly seated work, with only two hours of standing or walking during a workday. (Tr. 16). The ALJ also explained that further restrictions were not warranted "because she was able to walk on toes, heels, tandem walk and squat, she used no assistive device, had strength normal, no atrophy, normal reflexes, and normal sensation, despite some stiffness, and deconditioned stamina" (Tr. 18, 915-26). As the medical record supports the ALJ's conclusions, there is no basis for remand on this point.

Plaintiff next argues that the ALJ's RFC assessment is not supported by substantial evidence. Plaintiff claims that the RFC should include limitations for her hip and back conditions, and for her obesity. However, the ALJ explained that he considered all of Plaintiff's impairments to determine what she could do in the workplace. (Tr. 16-20). The ALJ found that Plaintiff's "varied physical impairments caus[e] more than a minimal limitation in the claimant's ability to complete work activity including: degenerative joint disease of the right knee, a breathing impairment, obesity, and headaches. [And her] BMI was over 55". (Tr. 17, 492-536). The ALJ also noted that Plaintiff could "walk on toes, heels, tandem walk and squat, she used no assistive device, had strength normal, no atrophy, normal reflexes, and normal sensation, despite some stiffness, and deconditioned stamina". (Tr. 18, 915-26). Further, the ALJ observed that Plaintiff sought treatment for intermittent knee pain in April 2020; and despite imaging that confirmed degenerative changes, she did not engage in physical therapy after May 2020. (Tr. 18, 810-19, 859-84). With respect to Plaintiff's consultative examination, the ALJ observed that "the examiner noted no limits or restrictions on exam; she had full strength, sensation, and range of motion (except for [Plaintiff's] bilateral shoulders and hips)". (Tr. 19-20, 915-26).

Plaintiff argues that "some other etiology may be affecting her legs" (Pl. Brief at 10), and points to evidence of a positive straight leg raise on the right side (Tr. 1007), and imaging showing disc space narrowing and spondylosis (Tr. 977, 981-84). However, Plaintiff fails to point to any evidence that these conditions affected her ability to do light work.

With respect to the opinion evidence, the ALJ noted that the State agency found Plaintiff limited to light-level work, with two hours of standing and walking, (Tr. 19, 140-46). However, the ALJ explained that Plaintiff's other impairments and the medical record supported more

7

restrictions. (Tr. 16, 19). The ALJ addressed the consultative examiner's opinion that Plaintiff "could stand or walk two hours and lift over ten pounds" (Tr. 19-20, 915-26). The ALJ found that this opinion was "not very persuasive because it appears to offer an opinion based upon the *least* [Plaintiff] can do and not the *most*." (Tr. 20, emphasis in original). *See* 20 C.F.R. §§ 404.1545, 416.945 (Your residual functional capacity is the most you can still do despite your limitations.). The ALJ observed that "the remainder of the exam does not support limits in the bilateral shoulders or hips". (Tr. 20). Nevertheless, in terms of standing, walking, and lifting, the ALJ found that the opinion evidence was consistent with and supported the RFC determination. (Tr. 16). The ALJ concluded that the RFC assessment "fully accommodates [Plaintiff's] impairment[s] in light of the medical evidence". (Tr. 20).

  The ALJ acknowledged that Plaintiff's weight issues contribute to her impairments. The ALJ addressed the impairments and imaging that Plaintiff cites, and she explained how she accounted for them in the RFC determination. Plaintiff fails to cite to any evidence that would show that the ALJ's conclusions are unsupported. *See Gedatus v. Saul*, 994 F.3d 893, 903 (7th Cir. 2021) ("the presence of contradictory evidence and arguments does not mean the ALJ's determination is not supported by substantial evidence.").

  The ALJ was required only to articulate "at some minimum level, her analysis of the evidence. . . . She [was] not required to address every piece of evidence or testimony, but must provide some glimpse into her reasoning." *Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001). The ALJ has more than met this standard here, explaining which limitations in the RFC accounted for Plaintiff's various impairments and discussing the evidence supporting her analysis. *See id.* at 1177-78 (affirming ALJ's decision where the ALJ "thoroughly discussed the

8

medical evidence in making her decision"); *Young v. Barnhart*, 362 F.3d 995, 1001 (7th Cir. 2004) (it is the ALJ's role to resolve conflicts in the evidence of record). Thus, there is no basis for remand on this issue.

Plaintiff has also argued that the ALJ failed to meet her Step 5 burden of identifying a significant number of jobs in the national economy that Plaintiff can perform. At Step 5, the ALJ found that "considering [Plaintiff's] age, education, work experience, and [RFC], there were jobs that existed in significant numbers in the national economy that [she] could have performed". (Tr. 20-21). Specifically, the VE listed three such jobs: document preparer, with 18,000 jobs nationally; hand mounter, with 10,000 jobs nationally; and semi-conductor bonder, with 13,000 jobs nationally (Tr. 21, 58-59).

"The Commissioner bears the burden of showing that there are a significant number of jobs that the claimant is capable of performing." *Liskowitz v. Astrue*, 559 F.3d 736, 743-44 (7th Cir. 2009); *see* 20 C.F.R. § 404.1560(c)(2). The Seventh Circuit has upheld findings that jobs existing in approximately the same or in far fewer numbers were significant, and thus sufficient to meet the Commissioner's burden of proving the availability of employment that a disability claimant is capable of performing. *Mitchell v. Kijakazi*, No. 20-2897, 2021 WL 3086194, at *3 (7th Cir. July 22, 2021); *Collins v. Berryhill*, 743 F. App'x 21, 25 (7th Cir. 2018); *Lawrence v. Astrue*, 337 F. App'x 579, 583 (7th Cir. 2009); *Lee v. Sullivan*, 988 F.2d 789, 794 (7th Cir. 1993). Here, the ALJ properly found that considering Plaintiff's vocational factors and RFC, there were jobs existing in significant numbers in the national economy that Plaintiff could perform. (Tr. 21).

Plaintiff, in her reply brief, bemoans the fact that "significant" is not defined in the Social Security Act, nor in any regulation or ruling. Plaintiff contends that "significant" must have a

9

precise definition "otherwise it promotes arbitrary decision making that runs afoul of due process." (Reply at 2). However, obviously, not every word in a statute can be precisely defined, and most words are simply given their common, everyday meaning. "Significant", generally, means "not trivial". And clearly, 41,000 jobs is not a trivial number of jobs. Therefore, it is a significant number of jobs and the Commissioner has met her Step 5 burden.

Plaintiff also claims that the VE did not specifically testify that 41,000 jobs was a significant number. While that is true, the VE did testify as to the number of jobs available, which provided the evidence for the ALJ to make the factual finding that 41,000 jobs constitutes a significant number of jobs. Thus, there is no error here and the decision will be affirmed.

## Conclusion

On the basis of the foregoing, the Decision of the Commissioner is hereby AFFIRMED.

Entered: March 25, 2022.

s/ William C. Lee  
William C. Lee, Judge  
United States District Court